UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ALBERT JEROME BUSTILLOS,

     Plaintiff,

v.                                                              Civ. No. 20-1336 JB/GJF

CITY OF CARLSBAD, NEW MEXICO
and SERGEANT DANIEL VASQUEZ OF
CARLSBAD POLICE DEPARTMENT,

     Defendants.

PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Motion to Dismiss, or Alternatively,

Motion for Summary Judgment on Plaintiff's Complaint and for Qualified Immunity [ECF 11]

("Motion").  The Motion is fully briefed.  *See* ECFs 17 (Response), 18 (Reply).  For the reasons

set forth below, the Court concludes that Plaintiff has not shown that a reasonable jury could find

that Defendant Vasquez or Defendant City of Carlsbad violated Plaintiff's constitutional rights.

Consequently, the Court recommends[1] **GRANTING** Defendants' Motion and **DISMISSING**

**WITH PREJUDICE** the above-captioned cause.

**I.   BACKGROUND**[2]

    **A.  Handcuffing of Plaintiff**

On April 10, 2019, officers from the Carlsbad Police Department responded to calls that a

---

[1] The Court files this recommendation pursuant to the presiding judge's January 21, 2021, Order of Reference Relating to Non-Prisoner Pro Se Cases.  ECF 9.

[2] The operative facts set forth in this section are (1) affirmatively admitted by the opposing party; (2) not "specifically controverted" by the opposing party, D.N.M.LR-Civ. 56.1(b); and/or (3) taken from the video evidence, with the Court "accept[ing] the version of the facts portrayed in the video, but only to the extent that it 'blatantly contradict[s]' [Plaintiff's] version of events," *Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Any other dispute of fact between the parties not mentioned in this summary is one the Court considers immaterial.

woman with "altered mental status" was running in and out of traffic.  ECF 11-1 (Incident Report).
The officers found the woman at Jefferson Montessori Academy in Carlsbad, New Mexico.  *See
id.*; Stinson Body Worn Camera (BWC); Vasquez BWC.  Officer Devon Stinson was the first to
arrive and to attempt talking with the woman.  Stinson BWC 0:00-1:29.  Defendant Vasquez and
pro se Plaintiff Albert Bustillos—also known as "Stray Dog the Exposer"[3]—arrived a few
moments later and began walking towards the woman while Officer Stinson was attempting to
calm her down.  Stinson BWC 1:20-1:55; Vasquez 0:00-1:00.  As Plaintiff and Defendant Vasquez
were walking towards the woman, Officer Stinson extended his left arm in their general direction,
with his palm out, and said "you're scaring her off, can you guys stand back please."  Stinson
BWC 1:25-1:30; Vasquez BWC 0:15-1:20.  In addition, while walking next to Plaintiff and toward
the scene, Officer Vasquez then asked Plaintiff twice to "stay over there."  Vasquez BWC 0:15-
30.

     The officers attempted to calm down the woman—who was experiencing some sort of
severe "altered mental status"—as they waited for medical help to arrive.  *See, generally*, Stinson
BWC.  After several minutes, the woman became more agitated and started running from the
officers while yelling "pedophile."  *See id.* at 9:00-9:26.  Officer Stinson chased after her, grabbed
her by the left arm, assisted her in sitting down, and repeatedly told her "it's okay."  *Id.* at 9:20-
9:30.  The woman, however, remained agitated, pointed towards Plaintiff, and screamed "there's
a guy right there!"  *Id.* at 9:24-9:30.  She then repeatedly yelled "fuck you, bitch," among other
things, in Plaintiff's direction and, as the officers handcuff her, said "there's people scaring me ...

---

[3] *See YouTuber's Video of Police Incident Leads to Internal Investigation*, KRQE NEWS 13 (May 1, 2019),
https://www.krqe.com/news/new-mexico/youtubers-video-of-police-incident-leads-to-internal-investigation  (last
visited Aug. 9 2021)  (discussing the incident at issue in this case, noting Plaintiff's view that he acted "100 percent"
appropriately, and observing that "[o]n YouTube, [Plaintiff] goes by 'Stray Dog the Exposer,' documenting …
encounters with police on camera"); Stray Dog The Exposer, https://www.youtube.com/c/StrayDogTheExposer (last
visited Aug. 9. 2021) (Plaintiff's YouTube channel, containing a background image of a cartoon character urinating
on a police flag, along with Plaintiff's statement that he does not "hate cops" and is only "anti bad cop").

it's wrong ... it's scaring me ... I already got beat up." *Id.* at 9:30-10:20.

After the woman first screamed "there's a guy right there!," Defendant Vasquez began

walking toward Plaintiff and repeatedly ordered him to leave the scene:

> Okay you're scaring her.  You need to go now.  You're going to make her worse—
> you need to go.  I'm not going to ask you again—you need to go.  You're going to
> make her mental state worse.  You're going to make her status worse, now go, or
> you can go to jail—you decide.

Vasquez BWC 8:15-8:36.  Plaintiff refused to leave, however, and instead told Defendant Vasquez

that he was "far away" and that the woman's mental status was "not [Plaintiff's] problem" because

he was "on public property."  *Id.* at 8:36-45.  Defendant Vasquez repeated his commands for

Plaintiff to leave:

> I'm going to ask you one more time.  You're interfering with this investigation.
> Now you need to go.  One more time—do you want to go to jail? . . .  Go.  You are
> engaging in her mental status.  She just called you a pedophile.  Go.  I don't need
> her to get worse.  Have some respect for her mental status . . . . Go stand at that gate
> so you don't engage her mental status anymore.

*Id.* at 8:45-9:27.  Plaintiff continued to disregard these repeated orders and continued to argue with

Defendant Vasquez.  *Id.* at 9:27-38; *see also id.* (Plaintiff commenting, *inter alia*, that some people

don't like being recorded—to which Defendant Vasquez responded, "I don't care about you

recording, but you're not going to engage her mental status").

Defendant Vasquez then ordered Plaintiff *four times* (within approximately six seconds) to

"give me your I.D."  *Id.* at 9:38-9:44.  Plaintiff, however, remained argumentative and refused to

identify himself—unless Defendant Vasquez first provided him with a "reasonable articulable

suspicion" of a crime.  *Id.* at 9:38-47.  Defendant Vasquez then placed Plaintiff in handcuffs.  *Id.*

at 9:48-10:02. While Plaintiff was in handcuffs, Defendant Vasquez attempted to explain to

Plaintiff—despite Plaintiff's continued arguing and repeated interruptions—why Plaintiff was

handcuffed.  *Id.* at 10:00-15:15; *see also id.* (Defendant Vasquez discussing Plaintiff's (1)

interference with a police investigation by engaging with the woman's mental status, (2) refusal to comply with Defendant Vasquez's order to leave the scene, and (3) refusal to provide his identity). After Defendant Vasquez confirmed that Plaintiff would indeed go to jail if he continued to refuse to provide his identity, Plaintiff provided his identity and Defendant Vasquez removed the handcuffs (which had been on for just under eight minutes). *Id.* at 15:15-17:35.[4]

### B. Current Dispute

In October 2020, Plaintiff filed the instant lawsuit in New Mexico state court, alleging three causes of action. ECF 1-1 at 1-5. In the First Cause of Action (Deprivation of Civil Rights, 42 U.S.C. § 1983), Plaintiff alleges that—by threatening arrest, handcuffing Plaintiff, and removing Plaintiff's phone from his hand while handcuffing him—Defendants violated Plaintiff's First, Fourth, and Fourteenth Amendment rights. *Id.* at 3. The Second Cause of Action (False Arrest / False Imprisonment / Unlawful Detention) alleges that Plaintiff was "unlawfully detained" and that Defendant Vasquez therefore "acted maliciously, in bad faith, or in a wanton or reckless manner." *Id.* at 4. Plaintiff's Third Cause of Action (Violation of the New Mexico Tort Claims Act) alleges that (1) Defendant Vasquez "committed the torts of false arrest and malicious prosecution and deprived Bustillos of his rights, privileges or immunities secured by the constitution and laws of the United States and New Mexico" and (2) Defendant City of Carlsbad is "vicariously liable." *Id.*

Defendants removed this case to this Court and thereafter filed the instant Motion, requesting that the Court dismiss Plaintiff's claims. ECF 1; Mot. 1, 14-15. Specifically, Defendants request that the Court (1) grant Defendant Vasquez summary judgment based on

---

[4] Defendant Vasquez also gave Plaintiff back his cellphone (which Plaintiff had used to film the encounter and which Defendant Vasquez had removed from Plaintiff's hand while placing Plaintiff in handcuffs) and noted that the phone was still recording. *Id.* at 8:15-10:02, 17:35-18:03.

qualified immunity on Plaintiff's federal constitutional claims; (2) grant Defendant City of Carlsbad summary judgment on Plaintiff's federal constitutional claims, due to a lack of an underlying constitutional violation by Defendant Vasquez; and (3) dismiss Plaintiff's NMTCA claims due to the Court being "devoid of jurisdiction" over such claims.  *Id.* at 1, 6-15.

## II.  ISSUES

As to Defendant Vasquez, the primary issue is whether Plaintiff has shown that (1) a reasonable jury could find that Defendant Vasquez violated Plaintiff's constitutional right(s) under the First, Fourth, or Fourteenth Amendments and (2) that such right(s) were clearly established on April 20, 2019.  *See* Mot. 6-12; ECF 1-1 at 3-4; *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016).

As to Defendant City of Carlsbad, the primary issue is whether Plaintiff has shown that a municipal policy or custom caused an underlying constitutional violation by Defendant Vasquez. *See* Mot. 12-13; *Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

Finally, regarding Plaintiff's state law claims, the primary issue is whether—if the Court dismisses all of the federal claims—the Court should decline to exercise supplemental jurisdiction over Plaintiff's NMTCA claims.  *See* Mot. 6-15; 28 U.S.C. § 1367(c); *Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020).

### A.  Defendants' Primary Arguments

Defendants argue that Defendant Vasquez is entitled to qualified immunity from Plaintiff's First Amendment claim because (1) it is unclear whether "a First Amendment right to record law enforcement officers in public places" even exists; and (2) even if such a right exists, "it is not clearly established that a First Amendment retaliatory arrest claim may sound where there is

probable cause."  Mot. 10-12 (quoting *Fenn v. City of Truth or Consequences*, No. 2:18-cv-00634
WJ-GBW, 2019 WL 943518, at *6 (D.N.M. Feb. 26 , 2019), *aff'd* 983 F.3d 1143 (10th Cir. 2020))
(citing *Mocek v. City of Albuquerque*, 813 F.3d 912, 930-31 (10th Cir. 2015)); Reply 4.

In addition, Defendants argue that Defendant Vasquez is entitled to qualified immunity
from Plaintiff's Fourth Amendment claims because (1) Defendant Vasquez had *at least* a
reasonable suspicion that Plaintiff had committed the crime of "resisting … [a] peace officer in the
lawful discharge of his duties," N.M. Stat. Ann. § 30-22-1(D), by refusing to comply with
Defendant Vasquez's repeated orders to leave the scene; (2) Defendant Vasquez was thus
permitted to order Plaintiff to identify himself; and (3) Defendant Vasquez lawfully handcuffed
Plaintiff when, in response to this order, Plaintiff committed the crime of "concealing [his] true
name or identity," N.M. Stat. Ann. § 30-22-3. Mot. 6-10; Reply 2-4.

Defendants next contend that Defendant City of Carlsbad cannot be liable with respect to
Plaintiff's federal constitutional claims because (1) Defendant Vasquez committed no underlying
constitutional violation; and (2) even if such a violation occurred, Plaintiff "fail[ed] to allege in
the *Complaint* that the [violation] w[as] representative of an official policy or custom of the
municipality or w[as] carried out by an official with final policy making authority."  Mot. 12-13
(emphasis in original); Reply 5.

Finally, Defendants claim that, "[a]s a jurisdictional issue, Plaintiff failed to provide the
requisite notice under the NMTCA."  Mot. 13.  Specifically, they argue that Plaintiff failed to
"present to the mayor … a [timely] written notice stating the time, place, and circumstances of the
loss or injury."  *Id.* (citing N.M. Stat. Ann. § 41-4-16).  Consequently, Defendants argue that "the
Court is devoid of jurisdiction" over Plaintiff's NMTCA claims.  *Id.* at 13-14; Reply 5-6.
Alternatively, they assert that "Plaintiff's state law tort claims of false arrest and malicious

6

prosecution fail as a matter of law because he was not *arrested* and … the undisputed evidence shows that [Defendant] Vasquez had reasonable suspicion to briefly detain Plaintiff."  Mot. 14 (emphasis added); Reply 5-6.

### B.  Plaintiff's Primary Arguments

The Court notes that Plaintiff's Response violates the Court's Local Rules because it does not (1) "contain a concise statement of the material facts *cited by [Defendant]* as to which [Plaintiff] contends a genuine issue does exist," (2) "refer with particularity to those portions of the record upon which [Plaintiff] relies," (3) "state the number of [Defendants'] fact that is disputed," or (4) otherwise "*specifically* controvert[]" the "material facts set forth in [Defendants'] Memorandum."  D.N.M.LR-Civ. 56.1(b) (emphasis added); *see* Resp. 1-9.[5]  Furthermore, the response includes *no* exhibits and cites to *no* evidence of record.  *See id.*[6]  The primary purpose of Plaintiff's Response, as stated in its introduction, appears to be to "allow this Man to be Heard"— particularly because, according to Plaintiff, "if a Man comes into this court armed with Facts and Facts of Law, he will prevail."  Resp. 1.  The Response then sets forth Plaintiff's factual and legal argument as to why Defendants' Motion should be denied.  *Id.* at 1-9.

In relevant part, Plaintiff argues that his refusal to leave his preferred filming location—in defiance of Defendant Vasquez's orders—could not have caused a reasonable officer to suspect that Plaintiff was refusing to obey a lawful police command.  *Id.* at 1-3, 5-6.  Plaintiff reasons that no such reasonable suspicion could have existed because Plaintiff was (1) "on public ground

---

[5] Although "[a] pro se litigant's pleadings are to be construed liberally," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), such a litigant must nevertheless "follow the same rules of procedure that govern other litigants."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted).

[6] *See also* Fed. R. Civ. P. 56(c)(1) (establishing that "[a] party asserting that a fact … is genuinely disputed must support the assertion by *citing to particular parts of materials in the record* … or showing that the materials cited do not establish the absence … of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" (emphasis added)).

standing over 30 feet away" and (2) merely "exercis[ing] his Constitutional rights" under the First Amendment to altruistically record the encounter "for [the woman's] protection." *Id.* at 1-2, 5. Plaintiff further reasons that "[a] person exercising [such] Constitutionally protected rights cannot be considered … interfering with law enforcement." *Id.* at 2. Therefore, the officers' "concerns" (e.g., about the woman's safety or conducting a safe and proper investigation) "d[id] not trump [Plaintiff's] Constitutional rights" to remain in his preferred filming location. *Id.* at 2.

Because there was no reasonable suspicion to believe that Plaintiff had committed the crime of refusing to obey a lawful police order, Plaintiff further argues that he "was not required by law to produce his identification." *Id.* at 3. Consequently, Plaintiff asserts that his "arrest" for refusing to identify himself was, *inter alia*, in violation of the Fourth Amendment because it was done "without any reasonable suspicion or probable cause" (as well as with "excessive force"). *Id.* at 3-9.

Regarding the Defendant City Carlsbad, Plaintiff simply contends that this Defendant is "vicariously liable for Sergeant Vasquez's conduct, which occurred in the scope of duty." *Id.* at 7. And regarding his NMTCA claims, Plaintiff provides no response whatsoever to Defendants' assertion that the Court lacks jurisdiction over these claims. *See id.* at 1-9.

## III.  LAW

### A.  Summary Judgment Standard

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bond v. City of Tahlequah*, 981 F.3d 808, 814 (10th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Id.* (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)). And "[a] dispute

over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Smothers*, 740 F.3d at 538 (quotation marks omitted)).

"In applying this standard," the Court must "view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Bond*, 981 F.3d at 815 (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016)). Consequently, if the record "contains video evidence of the incident in question," the Court will "accept the version of the facts portrayed in the video, but only to the extent that it 'blatantly contradict[s]' the plaintiff's version of events." *Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 249 (1986)); *see also First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U. S. 253, 289 (1968) (the question at summary judgment is whether a jury should "resolve the parties' differing versions of the truth at trial").

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quotations omitted). To satisfy this burden, the nonmovant must identify facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citation omitted). Furthermore, all "material facts set forth in the [summary judgment motions

and responses] will be deemed undisputed unless specifically controverted."  D.N.M.LR-Civ. 56.1(b).

### B.  Qualified Immunity

Under 42 U.S.C. § 1983, any person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Nevertheless, in "[b]alancing the purposes of § 1983 against the imperatives of public policy," the Supreme Court has held that "police officers are entitled to a *qualified immunity* protecting them from suit."  *Nixon v. Fitzgerald*, 457 U.S. 731, 746 (1982) (emphasis added); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) (observing that "government officials are entitled to some form of immunity from suits . . . . to shield them from undue interference with their duties and from potentially disabling threats of liability").

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Bond*, 981 F.3d at 815 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' . . ."  *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 744 (2011)).  Consequently, "[w]hen a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that the defendant is immune from suit.'"  *Estate of Smart by Smart v. City of Wichita*,

951 F.3d 1161, 1168 (10th Cir. 2020) (brackets omitted) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)).

"When a defendant moves for summary judgment based on qualified immunity . . . . the burden shifts to the plaintiff to show the defendant is not entitled to immunity." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quoting *Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 971 (10th Cir. 2006)).  "Thus, at summary judgment, [the Court] must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* at 900-01 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)); *see also Bond*, 981 F.3d at 815 (noting that "[t]he plaintiff must satisfy both prongs to overcome a qualified immunity defense" and that "[the court] may exercise [its] discretion as to which prong to address first" (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))).

### C.  First Amendment Retaliatory Arrest Claim

The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech, or of the press."  U.S. Const. amend. I.  Thus, "'as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (quoting *Hartman v. Moore*, 547 U. S. 250, 256 (2006)).

"Police officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in 'circumstances that are tense, uncertain, and rapidly evolving.'" *Nieves*, 139 S. Ct. at 1715 (quoting *Graham v. Connor*, 490 U. S. 386, 397 (1989)).  For instance, police officers must often make "split-second judgments" in deciding "whether the suspect is ready to cooperate, or, on the other hand, whether he may present a continuing threat to interests that the

law must protect." *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018). And when police officers are accused of making arrests "in retaliation for speech protected by the First Amendment," *Nieves*, 139 S. Ct. at 1721, "the complexity of proving (or disproving) causation in these cases creates a risk that the courts will be flooded with dubious retaliatory arrest suits." *Lozman*, 138 S. Ct. at 1953.

As a result of such concerns, "[t]he plaintiff pressing a [First Amendment] retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S. Ct. at 1724, 1727 (requiring a "threshold showing of the absence of probable cause").[7] After meeting this "threshold showing," a plaintiff suing for retaliatory arrest must then establish the following three elements:

> (1) that [he] was engaged in constitutionally protected activity; (2) that the defendant[s'] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant[s'] adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.

*Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Regarding the first of these three elements (i.e., whether a plaintiff "engaged in constitutionally protected activity"), the Tenth Circuit recently addressed the question of "whether [individuals] actually ha[ve] a First Amendment right to record the police performing their official duties in public spaces." *Frasier v. Evans*, 992 F.3d 1003, 1020 n.4 (10th Cir. 2021); *see also id.* ("thank[ing] *amici* for their helpful briefing on the issue of whether the right exists"). The court,

---

[7] "Although probable cause should generally defeat a retaliatory arrest claim, a *narrow* qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* (emphasis added). "As an example, if officers have a practice of never arresting people for jaywalking but then do arrest a plaintiff for jaywalking after he or she has complained about the police, a possible retaliatory-arrest claim could survive, probable cause notwithstanding." *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1227 n.17 (10th Cir. 2020) (citing *Nieves*, 139 S. Ct. at 1727).

however, "exercise[d] [its] discretion to bypass the constitutional question of whether such [a] right even exists." *Id.* The court did so because it "ultimately determine[d] that any First Amendment right that [the plaintiff-appellee] had to record the officers was not *clearly established* [in August 2014]." *Id.* (emphasis added).[8] Consequently, the court "[saw] no reason to risk the possibility of 'glibly announc[ing] *new* constitutional rights in dictum that [would] have [had] no effect whatsoever on the case.'" *Id.* (emphasis added) (quoting Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1277 (2006)); *see also id.* at 2020 (observing that "[a] defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff the burden of showing that the constitutional right the defendant allegedly violated was *clearly established* at the time of the violation" (emphasis added)).

**D. Fourth Amendment Claims**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures." U.S. Const. amend. IV (emphasis added).

1. Unlawful Arrest, Detention, and Imprisonment

"As a general matter, a warrantless arrest is consistent with the Fourth Amendment when there is probable cause to believe the arrestee has committed a crime." *Mocek v. City of*

---

[8] The court noted that the plaintiff-appellee "fail[ed] to demonstrate how the alleged unlawfulness of the officers' conduct in retaliating against him for recording them 'follow[s] immediately from' the abstract right to create speech and gather news." *Id.* at 1021 (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). "[S]uch general First Amendment principles protecting the creation of speech and the gathering of news," the court reasoned, "would not have put the unconstitutionality of the officers' allegedly retaliatory conduct 'beyond debate.'" *Id.* at 1022 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)); *see also id.* (observing that "the Fifth Circuit, for example, has already rejected the argument that one can derive the right to 'video record[] the police' from 'general First Amendment principles'" (quoting *Turner v. Driver*, 848 F.3d 678, 686 (5th Cir. 2017))); *id.* at 2022-23 (further observing that "the out-of-circuit authorities appear to be split on the clearly-established-law question"—with the Third, Fifth, and Tenth Circuits having respectively concluded that no such right was clearly established in 2013, 2015, or 2002, but the First Circuit concluding that it was in 2007—and relying on the principle that "[a] circuit split will not satisfy the clearly established prong of qualified immunity" in concluding that "in August 2014, reasonable officers … would not have had fair notice that their conduct was unlawful" (alterations, quotation, and citations omitted)).

*Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015).

In New Mexico, "resisting or abusing … [a] peace officer in the lawful discharge of his duties" is a misdemeanor crime.  N.M. Stat. Ann. § 30-22-1(D).  "The New Mexico Court of Appeals has so far interpreted the phrase 'resisting or abusing' … to prohibit three types of conduct: (1) 'physical acts of resistance,' (2) the use of 'fighting words' to attack an officer, and (3) the refusal to 'obey' lawful police commands."  *United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019) (quotations omitted) (citing, *inter alia*, *State v. Jimenez*, 392 P.3d 668, 682 (N.M. Ct. App. 2017) (observing that "avoiding doing something required, including refusing to comply with an officer's orders"—e.g., "refus[ing] to leave a fast-food restaurant parking lot after being ordered to do so by an officer"—also violates this provision)).

Furthermore, "[i]n New Mexico, it is a misdemeanor to 'conceal[] one's true name or identity … with intent to obstruct the due execution of the law or with intent to intimidate, hinder, or interrupt any public officer or any other person in a legal performance of his duty.'"  *Mocek*, 813 F.3d at 922 (quoting N.M. Stat. Ann. § 30-22-3).  Indeed, "[d]uring an investigative stop supported by reasonable suspicion of a predicate, underlying crime, 'it is well established that an officer may ask a suspect to identify himself' … [and that] [the] state may criminalize the suspect's failure to comply."  *Id.*  (quoting *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186 (2004)).  "But an officer may not arrest someone for concealing identity without 'reasonable suspicion of some predicate, underlying crime.'"  *Id.* (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008)).  Consequently, "to determine whether [a plaintiff's] arrest [for concealing his identity] comported with the Fourth Amendment, [a court] must first consider whether there was reasonable suspicion to stop him and request his identity."  *Id.*  "If there was, [the court] next must determine whether probable cause existed to believe he concealed his identity."  *Id.* at 922-

23.

> The following standards are used to determine reasonable suspicion and probable cause:

>> [Courts] look to the 'totality of the circumstances' to determine whether there was reasonable suspicion of wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* The question is "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). And "reasonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (internal quotation marks omitted).

>> . . . .

>> … "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (internal quotation marks omitted). This is true regardless of the officer's subjective intent. *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("The constitutionality of an arrest does not depend on the arresting officer's state of mind."); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

*Mocek*, 813 F.3d at 923-25.

Finally, "the use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." *Cortez v. McCauley*, 478 F.3d 1108, 1116-17 (10th Cir. 2007) (quotation and alterations omitted). Nevertheless, such techniques "do[] not necessarily transform [an investigative] detention into a full custodial arrest," particularly "when the circumstances reasonably warrant such measures in order for the officers to conduct an investigative detention safely." *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1309 (10th Cir. 2015) (quotation omitted). But regardless of whether a seizure is deemed to be an arrest or investigative detention, a finding of probable cause (for an arrest) incorporates the "less

demanding" finding of reasonable suspicion (for an investigative detention).  *See  United States v. Tafuna*,  No. 20-4078, __ F.4th __,  2021 WL 3164039, at *2 (10th Cir. Jul. 27, 2021) (observing that "custodial arrests, the most intrusive of Fourth Amendment seizures, require probable cause"); *Kansas v. Glover*, 140 S. Ct. 1183, 1187-88 (2020) (observing that an investigative detention or "stop" requires the "less demanding standard [of] reasonable suspicion"—which is "obviously less than [what] is necessary for probable cause" (quotations omitted)).[9]

### 2.  Excessive Force

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest … or other 'seizure' of [her] person" is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).  Consequently, "[t]o state an excessive force claim under the Fourth Amendment, plaintiff[] must show … that the seizure was unreasonable." *Bond*, 981 F.3d at 815 (quoting *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010)).

Whether a seizure was unreasonable, however, is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).  Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396-97).  Furthermore, "the 'reasonableness' inquiry in an excessive force case is an *objective* one: the question is whether the

---

[9] *See also Kerns v. Bader*, 663 F.3d 1173, 1187 (10th Cir. 2011) (observing that (1) any claims for "false arrest, false imprisonment, [or] malicious prosecution claims" cannot survive unless a plaintiff establishes that "his arrest and detention were without probable cause" and (2) "the easiest and most economical way to resolve" such a case was to "uphold the defendants' claim of qualified immunity on this [probable cause] basis"—particularly as "little if any conservation of judicial resources [would] be had by … a discussion of the 'clearly established' prong" (quotation omitted)).

officers' actions are '*objectively* reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* (emphasis added) (quoting *Graham*, 490 U.S. at 397).  "This is a 'totality of the circumstances' analysis."  *Id.* at 815-16 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).  Finally, "[w]hen considering 'the facts and circumstances of each particular case,' [the Court] specifically consider[s] three factors outlined by the Supreme Court in *Graham*: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Id.* at 816 (quoting *Graham*, 490 U.S. at 396).

"[I]n nearly every situation where an arrest is authorized … handcuffing is appropriate." *Mglej v. Gardner*, 974 F.3d 1151, 1166 (10th Cir. 2020) (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009)).  Indeed, "the right to make an arrest … necessarily carries with it the right to use *some* degree of physical coercion or threat thereof to effect it."  *Id.* (emphasis added) (quoting *Graham*, 490 U.S. at 396).  Furthermore, "the Fourth Amendment 'does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones.'" *Fisher*, 584 F.3d at 894 (quoting *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005)); *see also id.* (observing that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" (quoting *Graham*, 490 U.S. at 396)).  Consequently, "[a]n excessive force claim that includes a challenge to the '[m]anner or course of handcuffing' requires the plaintiff to show both that 'the force used was more than reasonably necessary' and 'some non-de minimis actual injury.'"  *Mglej*, 974 F.3d at 1167 (quoting *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020)).[10]

---

[10] For instance, the Tenth Circuit has held that a reasonable jury could find that the manner of handcuffing was

### E.  Fourteenth Amendment Claim

"In a technical sense, a Fourth Amendment claim against New Mexico officers is also a Fourteenth Amendment claim, because that is the amendment that incorporates the Fourth Amendment's protections against the states." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 n.3 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961)).  For the same reason, a First Amendment claim against New Mexico officers also qualifies, "[i]n a technical sense," *id.*, as a Fourteenth Amendment claim.  *See Douglas v. Jeannette*, 319 U.S. 157, 162 (1943) ("We have repeatedly held that the Fourteenth Amendment has made applicable to the states the guaranties of the First."). Nevertheless, the Court "avoid[s] this terminology here to reduce confusion." *Mondragon*, 519 F.3d at 1082 n.3.

"[A] plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims." *Id.* at 1082.  "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004)); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) (observing  that "a false imprisonment ends once the victim becomes held" pursuant to "legal process," such as "when … he is bound over by a magistrate or arraigned on charges").  Nevertheless, neither (1) "a claim

---

excessive when applied to a non-threatening, cooperative petty misdemeanant who "lay bleeding on the ground," whose "bicep wound had swollen to the size of a grapefruit," and who "pleaded with the officers to avoid exacerbating the injuries"—but who nevertheless was injured when "an officer placed a knee in [his] back to leverage his arms [due to his swollen bicep], and handcuffed him with his arms behind his back." *Fisher*, 584 F.3d at 892, 895-900.  In addition, In addition, the Tenth Circuit has held that the level of force would be unreasonable if police were to injure a non-threatening, cooperative petty misdemeanant protestor by "hit[ting] [him] with a rifle-fired projectile," "grabb[ing] him, thrust[ing] him to the ground, and forcibly escort[ing] him through a cloud of tear gas," and "us[ing] 'an incredible amount of force' to put his wrist into a painful hyperflexion position . . . . from three to five minutes[,] result[ing] in a torn tendon." *Fogarty*, 523 F.3d at 1161; *see also id.* at 1162 (concluding that "it would be apparent to a reasonable officer that the use of force adequate to tear a tendon is unreasonable against a *fully restrained* arrestee" (emphasis added)); *McCowan v. Morales*, 945 F.3d 1276, 1282-84 (10th Cir. 2019) (holding that it would constitute unreasonable force for an officer to place a handcuffed, "fully compliant[,] and subdued misdemeanant arrestee" in the "'caged' back seat of the patrol car"—"unrestrained by a seatbelt"—and then to "[drive] recklessly, knowingly tossing [the arrestee] about the back seat").

under the Fourth Amendment" (which is "analogous to a [state law] tort claim for false arrest or false imprisonment"), *Mondragon*, 519 F.3d at 1082, nor (2) "a claim under the procedural component of the Fourteenth Amendment's Due Process Clause" (which is "analogous to a [state law] tort claim for malicious prosecution"), *id.*, can survive unless a plaintiff establishes that "his arrest and detention were without probable cause." *Kerns*, 663 F.3d at 1187.

### F.  Defining a Clearly Established Right

To establish that an officer "is not entitled to immunity," *Gutierrez*, 841 F.3d at 900, a plaintiff must not only show that "the officers' alleged conduct violated a constitutional right"—but also that "[the] right was clearly established at the time of the violation, such that *every reasonable officer* would have understood that such conduct constituted a violation of that right." *Mglej*, 974 F.3d at 1159 (emphasis added) (quoting *Estate of Smart*, 951 F.3d at 1168). Furthermore, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).  "Nonetheless … there need not be a prior 'case directly on point,' so long as there is existing precedent that places the unconstitutionality of the alleged conduct 'beyond debate.'" *McCowan v. Morales*, 945 F.3d 1276, 1285 (10th Cir. 2019)  (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)); *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197-98 (10th Cir. 2019) (same); *see, e.g.*, *McCowan*, 945 F.3d at 1287 (explaining that Tenth Circuit case law provides "notice that the *gratuitous* use of force against a *fully compliant*, *restrained*, and *non-threatening* misdemeanant arrestee [is] unconstitutional" (emphasis added)).

### G.  Municipal Liability under § 1983

Local governments are considered "persons" who may be liable under § 1983. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Nevertheless, "[i]t is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the

harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1952 (2018) (quoting *Monell*, 436 U.S. at 691).  Thus, "to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Jensen v. West Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (quoting *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)); *see also Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (noting that "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers").

Regarding the first factor, a "municipal policy or custom … may take one of the following forms:"

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).  Furthermore, "[t]hrough 'its deliberate conduct,' the municipality must have been the 'moving force' behind the injury." *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Regarding the second factor—which requires an "injury" (i.e., "an underlying constitutional violation")—"a finding of qualified immunity does not shelter a municipality from liability." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).  In other words, "[w]hen

a finding of qualified immunity [for individual defendants] is predicated on the basis that the law is not clearly established, it is indeed correct that 'there is nothing anomalous about allowing a suit against a municipality to proceed when immunity shields the individual defendants, for the availability of qualified immunity does not depend on whether a constitutional violation has occurred.'" *Id.* at 783 (alteration omitted) (quoting *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988)). When, however, qualified immunity is based on the finding that "the officer's conduct did not violate the law," then "such a finding is equivalent to a decision on the merits . . . . [and] may preclude the imposition of any municipal liability." *Id.*

### H. Supplemental Jurisdiction

Generally, a district court "shall have supplemental jurisdiction over all other claims that are so related to claims … within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Nevertheless, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." § 1367(c). Consequently, "[a] district court, upon dismissing Plaintiff's federal claims, [does] not abuse its discretion by declining to exercise supplemental jurisdiction over [his] state law claims." *Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020) (also observing that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). In fact, "if the federal claims are dismissed before trial … the state claims *should* be dismissed as well." *Id.* (emphasis added) (quoting *Gibbs*, 383 U.S. at 726).

## IV. ANALYSIS

As explained below, the Court concludes that Plaintiff has not shown that (1) a reasonable jury could find that Defendant Vasquez violated Plaintiff's clearly established constitutional

right(s) or (2) a municipal policy or custom caused an underlying constitutional violation by Defendant Vasquez.  Consequently, the Court will recommend dismissing all of Plaintiff's federal constitutional claims.  Furthermore, because the Court recommends dismissing all federal claims, it will also recommend declining to exercise supplemental jurisdiction over Plaintiff's remaining NMCTA state claims.

### A. Defendant Vasquez Did Not Violate Plaintiff's Constitutional Rights

#### 1.  Defendant Vasquez Did Not Violate Plaintiff's First Amendment Rights

To the extent Plaintiff has pled a First Amendment retaliatory arrest claim, the Court holds that Plaintiff has not "set forth specific facts from which a rational trier of fact could find," *Libertarian Party of N.M.*, 506 F.3d at 1309, "the absence of probable cause for the arrest."  *Nieves*, 139 S. Ct. at 1724; *see* Resp. Therefore, Plaintiff has not met the required "threshold showing of the absence of probable cause" for a retaliatory arrest claim.  *Id.*

In assessing Plaintiff's arrest,[11] the Court finds that Defendant Vasquez had both "reasonable suspicion to stop him and request his identity" and then "probable cause … to believe he concealed his identity."  *Mocek*, 813 F.3d at 922.  To begin, viewing the facts in the light most favorable to Plaintiff, Defendant Vasquez had "reasonable suspicion of [a] predicate, underlying crime," *id.*, of "resisting … [a] peace officer in the lawful discharge of his duties."  N.M. Stat. Ann. § 30-22-1(D).  Furthermore, the Court finds that Defendant Vasquez had not *just* reasonable suspicion—but also probable cause—to believe that Plaintiff had committed this crime of refusing

---

[11] Plaintiff asserts that his handcuffing amounted to an arrest, Rep. 3-4, while Defendants assert that Plaintiff was only "briefly *detained*."  Mot. 4 (emphasis added).  The Court, however, in "view[ing] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to [Plaintiff]," *Bond*, 981 F.3d at 815, will assume—for purposes of its analysis—that Defendant Vasquez's handcuffing of Plaintiff "enter[ed] the realm of an arrest."  *Cortez*, 478 F.3d at 1116-17.

to obey a lawful police command.[12]  And this probable cause arose when Plaintiff blatantly refused to comply with Defendant Vasquez's repeated and unequivocal orders to leave the scene.  *See Vasquez BWC* 8:10-9:38 (Defendant Vasquez repeatedly ordering Plaintiff to leave—while explaining that Plaintiff was interfering with the woman's mental state and the officers' investigation).  Consequently, in light of such probable cause, Defendant Vasquez lawfully could arrest Plaintiff for the crime of refusing to obey a lawful police command and/or request Plaintiff's identity.  *See id.* at 9:38-9:44; *Mocek*, 813 F.3d at 922.[13]

Next, again viewing the facts in the light most favorable to Plaintiff, Defendant Vasquez had probable cause to believe that Plaintiff committed the crime of "concealing [his] true name or identity."  N.M. Stat. Ann. § 30-22-3.  Such probable cause arose when Plaintiff refused to identify himself—despite having been lawfully ordered four times to provide his I.D.  Vasquez BWC 9:38-47.  Consequently, Defendant Vasquez was also permitted to arrest Plaintiff for the *additional* crime of concealing his identity.  *Mocek*, 813 F.3d at 922-23.

Finally, Defendant Vasquez's probable cause to arrest Plaintiff for concealing his identity "defeat[s] [Plaintiff's] [First Amendment] retaliatory arrest claim."  *Nieves*, 139 S. Ct. at 1727.  Plaintiff has not shown that this case presents a genuine factual dispute on the "*narrow*

---

[12] The Court does not assess Defendant Vasquez's subjective intent or state of mind, but rather what "an officer of reasonable caution [would] believe."  *Mocek*, 813 F.3d at 923, 925; *see Apodaca*, 443 F.3d at 1289 ("The constitutionality of an arrest does not depend on the arresting officer's state of mind.").

[13] In finding *probable cause* to *believe* that a lawful police command was disobeyed, the Court need not expressly rule on the lawfulness of Defendant Vasquez's orders to Plaintiff to go even further away from the woman with the severely "altered mental status" (whom Plaintiff's presence appeared to further agitate).  The Court, however, observes that these orders clearly appear to be lawful.  *See, e.g.*, *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (observing that "police officers are entitled to take reasonable precautions to ensure … *the safety of others*" (emphasis added) (quotation omitted)); *Grice v. McVeigh*, 873 F.3d 162, 167 (2nd Cir. 2017) (observing that "a police officer, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to *ensure the safety of [others]*, regardless of whether probable cause to arrest exists" (emphasis added) (quotation omitted)).  Furthermore, although Defendant Vasquez might arguably have been authorized to detain Plaintiff *without* any probable cause or reasonable suspicion—purely as a "reasonable precaution to ensure … the [woman's] safety"—the Court need not address this issue, as the Court ultimately concludes that Defendant Vasquez had probable cause to arrest Plaintiff for two crimes.

qualification … for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."  *Id.* (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1) (establishing that "[a] party asserting that a fact … is genuinely disputed must support the assertion by citing to particular parts of materials in the record"); *Libertarian Party of N.M.*, 506 F.3d at 1309 (requiring the nonmovant, upon a "prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," to "set forth specific facts from which a rational trier of fact could find for the nonmovant").  For instance, Plaintiff has presented no argument, evidence, or allegation that officers typically choose not to handcuff those who refuse to obey lawful orders to leave an investigation scene, and who subsequently refuse to obey lawful orders to identify themselves.  *See* ECF 1-1; Resp.; *c.f.* Vasquez BWC 9:27-38 (Defendant Vasquez stating "I don't care about you recording, but you're not going to engage her mental status").

In sum, there is no genuine factual dispute that Defendant Vasquez had probable cause to arrest Plaintiff for either or both crimes (i.e., the crimes of disobeying a lawful police command and concealing one's identity).  Furthermore, Defendant Vasquez is entitled to judgment on Plaintiff's retaliatory arrest claim because there is no evidence that, but for Plaintiff's speech, this otherwise lawful arrest would not have happened.  *Nieves*, 139 S. Ct. at 1724, 1727.

2.   Defendant Vasquez Did Not Violate Plaintiff's Fourth Amendment Rights

As discussed in Section IV(A)(1) above, Defendant Vazquez had "probable cause to believe [Plaintiff] ha[d] committed a crime"— in fact, two crimes.  *Mocek*, 813 F.3d at 922.  Thus—in terms of probable cause—Plaintiff's arrest "comported with the Fourth Amendment."  *Id.* at 922-23.

To the extent Plaintiff has pled a Fourth Amendment *excessive force* claim, the Court holds

that the seizure (i.e., handcuffing) of Plaintiff was not "unreasonable."  U.S. Const. amend. IV.

Specifically, in viewing the facts in the light most favorable to Plaintiff, the Court finds that the

force used to handcuff Plaintiff was "objectively reasonable in light of the facts and circumstances

confronting [Defendant Vasquez], without regard to [his] underlying intent or motivation," *Bond*,

981 F.3d at 815.  *See* Vazquez BWC 8:15-10:02 (Plaintiff's interactions with Defendant Vasquez

leading to Plaintiff being handcuffed), 10:02-17:35 (Plaintiff and Defendant Vasquez's

interactions before Plaintiff is released from handcuffs); *see also Mglej*, 974 F.3d at 1166

(observing that "in nearly every situation where an arrest is authorized … handcuffing is

appropriate").  Furthermore, Plaintiff has presented no argument or evidence "show[ing] both that

'the force used was more than reasonably necessary' and 'some non-de minimis actual injury.'"

*Mglej*, 974 F.3d at 1167 (quoting *Donahue*, 948 F.3d at 1196); *Libertarian Party of N.M.*, 506

F.3d at 1309.  Thus—in terms of excessive force—Plaintiff's arrest also comported with the Fourth

Amendment.

        3.   <u>Defendant Vasquez Did Not Violate Plaintiff's Fourteenth Amendment Rights</u>

        To the extent Plaintiff has pled a *separate* Fourteenth Amendment claim (i.e., one that is

not also a First or Fourth Amendment claim that has been incorporated into the Fourteenth

Amendment and that has been addressed above in Sections IV(A)(1)-(2)), the Court holds that

Defendant Vasquez did not violate Plaintiff's rights under the Fourteenth Amendment.  As

mentioned, neither (1) "a claim under the Fourth Amendment" (which is "analogous to a [state

law] tort claim for false arrest or false imprisonment"), *Mondragon*, 519 F.3d at 1082, nor (2) "a

claim under the procedural component of the Fourteenth Amendment's Due Process Clause"

(which is "analogous to a [state law] tort claim for malicious prosecution"), *id.*, can survive unless

a plaintiff establishes that "his arrest and detention were without probable cause."  *Kerns*, 663 F.3d

at 1187.  And because there was probable cause to arrest Plaintiff, *see supra* Section IV(A)(1), neither of these claims can succeed.

### 4.   The Constitutional Rights at Issue Were Not Clearly Established

Finally, the Court briefly notes that—even *assuming* Defendant Vasquez had violated Plaintiff's First or Fourth Amendment rights, which he did not, *see supra* Section IV(A)(1)-(2)—he would still be entitled to qualified immunity.  First, "any First Amendment right that [Plaintiff] had to record the officers was not *clearly established*" in April 2019.  *Frasier*, 992 F.3d at 1020 n.4 (emphasis added).  The Court is not aware of any cases—and Plaintiff cites to none—suggesting that this right was clearly established in the Tenth Circuit in April 2019.  Indeed, in March 2021, the Tenth Circuit intentionally "bypass[ed] the constitutional question of whether" the right to "record the police performing their official duties in public spaces" is something that "even *exists*."  *Id.* (emphasis added).  And if the Tenth Circuit was questioning the very *existence* of such a right just a few months ago, it stands to reason that such a right would not have been "clearly established" in April 2019.

Moreover, the Court concludes that Plaintiff's rights to be free from arrest were not "clearly established at the time of the violation, such that that *every reasonable officer* would have understood that such [an arrest] constituted a violation of that right."  *Mglej*, 974 F.3d at 1159 (emphasis added).  In other words, not every reasonable officer in Defendant Vasquez's position would have somehow understood that (1) he had not even a reasonable suspicion of an underlying crime of refusing to obey lawful police commands; (2) he had no probable cause to believe Plaintiff concealed his identity; or (3) the manner in which he handcuffed Plaintiff used more force than was reasonably necessary.

### B. Defendant City of Carlsbad Cannot Be Liable Because Defendant Vasquez Did Not Violate Plaintiff's Constitutional Rights

Defendant City of Carlsbad cannot be subject to municipal liability because, as set forth in Section IV(A) above, "there was no underlying constitutional violation by any of its officers." *Graves*, 450 F.3d at 1218; *see also Hinton*, 997 F.2d at 783 (observing that when qualified immunity is based on the finding that "the officer's conduct did not violate the law," then "such a finding . . . . preclude[s] the imposition of any municipal liability" for the officer's lawful conduct).[14]

### C. The Court Should Decline Supplemental Jurisdiction over State Law Claims

Defendants requests that the Court apply the NMTCA to the factual assertion in their briefing, namely that "Plaintiff did not submit any written notice to the mayor" and that "there [is] no evidence that the City otherwise had notice that litigation was likely to ensure."  Mot. 13-14. Defendants argue that if the Court applies this state law to these facts, it should conclude that "the Court is devoid of jurisdiction" over Plaintiff's NMTCA claims.  Mot. 13-14.  In recommending that all the federal claims be dismissed, however, the Court considers itself bound by the Tenth Circuit's strong preference that "if the federal claims are dismissed before trial … the state claims should be dismissed as well."  *Strain*, 977 F.3d at 997.  Consequently, the Court will recommend declining to exercise supplemental jurisdiction over Plaintiff's entire state law claims (as opposed to adjudicating, at a minimum, the statutory jurisdictional aspects of those claims).

## V.  CONCLUSION

For the foregoing reasons, Plaintiff has not shown that a reasonable jury could find that Defendant Vasquez or Defendant City of Carlsbad violated Plaintiff's constitutional rights, clearly

---

[14] The Court also notes that Plaintiff has not alleged, argued, or presented evidence suggesting that a "*municipal policy or custom*" caused an underlying constitutional violation by Defendant Vasquez.  *See* ECF 1-1; Resp.; *supra* Section IV(A)(1)-(2).

established or otherwise.

Although Plaintiff professes a desire to serve the public by filming police encounters, *see* Vasquez BWC 10:25-12:06, his desire to film from a particular location does not authorize him to break the law.  Plaintiff correctly observes that the Constitution gives him the rights to free speech and protection from unreasonable seizures.  *See* ECF 1-1 at 2-4; Resp. 1-8.  But, as discussed above, this same Constitution also empowers a state—without violating these rights—to (1) criminalize Plaintiff's refusal to obey lawful police commands, (2) criminalize Plaintiff's subsequent concealment of his identity, and (3) arrest Plaintiff upon probable cause that he committed either or both crimes.  *See Romero*, 935 F.3d at 1128; *Nieves*, 139 S. Ct. 1722-27.

**IT IS THEREFORE RECOMMENDED** that this Court **GRANT** Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment on Plaintiff's Complaint and for Qualified Immunity [ECF 11] in that:

(1) Plaintiff's First Cause of Action (Deprivation of Civil Rights, 42 U.S.C. § 1983) [ECF 1-1 at 3] be **DISMISSED WITH PREJUDICE**.

(2) Plaintiff's Second Cause of Action (False Arrest / False Imprisonment / Unlawful Detention) [ECF 1-1 at 4]—to the extent it alleges a *federal claim* under 42 U.S.C. § 1983—be **DISMISSED WITH PREJUDICE**.

(3) Plaintiff's Second Cause of Action (False Arrest / False Imprisonment / Unlawful Detention) [ECF 1-1 at 4]—to the extent it alleges a *state claim* under New Mexico law—be **DISMISSED WITHOUT PREJUDICE** as a result of the Court declining to exercise supplemental jurisdiction over such a claim.

(4) Plaintiff's Third Cause of Action (Violation of the New Mexico Tort Claims Act) [ECF 1-1 at 4] be **DISMISSED WITHOUT PREJUDICE** as a result of the Court declining to exercise supplemental jurisdiction over such a claim.

**IT IS FURTHER RECOMMENDED** that the above-captioned cause be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.